UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VENTURE CORPORATION LTD and VENTURE DESIGN SERVICES, INC., <br><br> Plaintiffs/Counter Defendants, <br> v. <br><br> JAMES P. BARRETT, <br><br> Defendant/Counterclaimant. | Case No.: 5:13-cv-03384-PSG <br><br> **ORDER GRANTING-IN-PART COUNTER DEFENDANT'S MOTION TO DISMISS** <br><br> **(Re: Docket No. 26)** |

In this patent ownership dispute, Plaintiffs Venture Corporations, Ltd. ("VCL") and Venture Design Services, Inc. ("VDSI") (collectively "Venture") filed a request for declaratory judgment against their former employee James P. Barrett. In response, Barrett filed counterclaims against VCL for fraud and punitive damages. Venture now moves to dismiss Barrett's counterclaims. Having reviewed the papers and considered the arguments of counsel, Venture's motion to dismiss the counterclaims is GRANTED-IN-PART.

**I. BACKGROUND**

All facts are drawn from Barrett's answer to the complaint and counterclaims and taken as true for purposes of this motion.

In 2003, Barrett was a project manager at Agilent Technologies working on developing a wireless network optimization tool.[1] Around that time, VCL entered into a partnership with Agilent to provide manufacturing and development expertise for the tool whose development Barrett was managing.[2] In connection with this partnership, VCL created a separate entity, VDSI, to employ Barrett to perform essentially the same work, but as a direct employee of Venture rather than Agilent.[3] On June 28, 2003, Barrett and Venture entered into an Employee Confidential information and Inventions Agreement under which Barrett agreed to assign to VDSI anything that he might invent in the course of his employment plus six months after its end.[4] Barrett began his employment with VDSI on November 1, 2003.

Before the agreement went into effect, and while Barrett was still working for Agilent, Barrett allegedly invented the MineTracer technology at his home, on his own time, with his own equipment.[5] Around March 2005, Barrett went to Venture for help marketing it because of Venture's "expressed desire to assist 'idea' companies or product inventors in developing, producing and mass marketing others new inventions."[6] Barrett claims this disclosure was "for the purpose of offering a product" to VCL in exchange for VCL's partnership in developing, producing and marketing the products, and not as a deliverable from his work for VDSI.[7] Barrett

---

[1] *See* Docket No. 21 § 1.11 - 1.15.

[2] *See id.* at § 1.12.

[3] *See id.* at § 1.16.

[4] *See* Docket No. 1 at 4.

[5] *See* Docket No. 21 §§ 1.19-1.22 & 1.43.

[6] *Id.* at §§1.23-1.24.

[7] *Id.* at § 1.29.

2
Case No.: 5:13-cv-03384-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS

alleges that he and VCL were to share jointly in the results of this venture.[8]  Together, they began to manufacture, develop, and market the invention.[9]

On December 17, 2008, Barrett complied with VCL's request with a formal written contract assigning his invention rights to VCL for the purpose of securing certain tax status abroad.[10]  The contract between VCL and Barrett confirms that VCL gave some consideration directly to Barrett in exchange for the assignment, but Barrett alleges that this was part of the ongoing joint venture between Barrett and VCL rather than as complete compensation for his invention.[11]

Around March 2013, Barrett's employment with VDSI was terminated.[12]  However, VCL continued to market the Minetracer technology, as well as other ideas patented by Barrett, without sharing the revenue or benefits with him, in violation of their joint venture agreement.[13]  Barrett objected to this use of his patents, and when the parties were unable to resolve their dispute, Venture filed this action requesting declaratory judgment that it is the sole owner of the Minetracer patent rights.  Barrett responded and counterclaimed for fraud and punitive damages, arguing that he was led to believe that Venture would treat him as a partner with respect to the Minetracer technology rather than an employee, and that but for those representations, he would not have signed away his patents.

---

[8] *See id.* at § 1.41.

[9] *See id.* at §§ 1.44-1.46.

[10] *See id.* at §§ 1.48-1.50; Docket No. 21-1, Ex. 1.

[11] *See id.* at §§ 1.53.

[12] *See id.* at §§ 1.70.

[13] *See id.* at §§ 1.73.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

Under Fed. R. Civ. P. 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[14] If a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[15] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[16] Accordingly, under Fed. R. Civ. P. 12(b)(6), which tests the legal sufficiency of the claims alleged in the complaint, "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[17]

On a motion to dismiss, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[18] The court's review is limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.[19] However, the court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.[20]

---

[14] Fed. R. Civ. P. 8(a)(2).

[15] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[16] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[17] *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).

[18] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

[19] *Id.*

[20] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); s*ee also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear… that the complaint could not be saved by amendment."[21]

### B. Rule 9(b)

Claims sounding in fraud or mistake must comply with the heightened pleading requirements of Fed. R. Civ. P. 9(b) by pleading with particularity the circumstances surrounding the fraud or mistake. Rule 9(b) applies to the state claims at issue here as they involve allegations that consumers were misled.[22] The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge."[23] This includes "the who, what, when, where, and how of the misconduct charged."[24] Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."[25] The plaintiff must set forth what is false or misleading about a statement, and why it is false.[26]

### III. DISCUSSION

At bottom, Venture argues that Barrett's counterclaim fails to allege what misrepresentations were made, when they were made, who made them, or how they harmed him

---

[21] *Eminence Capital, LLC v. Asopeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[22] *Jones v. ConAgra Foods, Inc.*, Case No. 12-01633-CRB, 2012 WL 6569383 (N.D. Cal. Dec 17, 2012).

[23] *Semegen v. Weidne,* 780 F.2d 727, 731 (9th Cir. 1985).

[24] *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

[25] *Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th Cir.2007) (internal quotations omitted).

[26] *See In re Glenfed, Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir.1994) (en banc).

5
Case No.: 5:13-cv-03384-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS

with the specificity required under Rule 9(b).[27] Barrett responds that under Rule 9(b), this level of detail simply is not required.[28]

The court agrees with Venture that Barrett's counterclaim is insufficiently pleaded on at least two key points. First, nowhere in his complaint does he mention which representatives of VCL or VDSI allegedly led him to believe that he was engaging in a "joint venture" with the company. The Ninth Circuit has held that in order to satisfy the requirements of Rule 9(b), "the pleader must state the . . . identities of the parties to the misrepresentation."[29] In particular, the Ninth Circuit specifically found that a complaint based on representations by "unnamed members" of a corporation's management does not sufficiently identify the manner and circumstances of the misrepresentation.[30] That is precisely what Barrett has done here. His entire complaint is directed at representations made by VDSI and VCL without ever identifying the individuals that delivered the representations. Nor does he allege specifically when these misrepresentations were made. Instead, the complaint simply states that sometime after March 21, 2005, some representative of one of these two corporations at some point used first person plural pronouns in conversation with Barrett.[31] This falls far short of Rule 9(b)'s demands.

Second, although the counterclaim discloses the precise date that Barrett brought his invention to VCL's attention, it provides no detail as to when the alleged "joint venture" was formed. He simply states generally that "[t]he acts and conduct of both parties thereafter

---

[27] Docket No. 26 at 6.

[28] *See* Docket No. 31 at 6.

[29] *Miscellaneous Serv. Workers, Drivers & Helpers, Teamsters Local No. 427 v. Philco-Ford Corp., WDL Div.*, 661 F.2d 776, 782 (9th Cir. 1981).

[30] *See id.* ("In alleging a fraudulent misrepresentation by unnamed members of AFC's management, plaintiffs failed to plead with particularity the manner and circumstances of the asserted misrepresentation.").

[31] *See* Docket No. 21 at ¶¶ 1.36-1.37.

6
Case No.: 5:13-cv-03384-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS

established a joint venture."[32] Furthermore, the only detail he gives as to what "acts and conduct" gave rise to his understanding that they were in a joint venture is that VCL used the words "we" and "our" in describing the technology.[33] This also is insufficient.

Because the counterclaims allegations fall far short, Venture's motion to dismiss Barrett's actual and constructive fraud claims is GRANTED with leave to amend.

Venture next argues that the punitive damage claim also must be dismissed based on Barrett's failure to allege fraud with the requisite specificity or any form of oppression at all. Under California Civil Code Section 3294, a defendant may be liable for punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."[34] "Oppression" is defined in the statute as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights,"[35] and the Ninth Circuit has further defined "despicable" conduct as that which is so "vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people, and has the character of outrage frequently associated with crime."[36] In sum, "[s]omething more than the mere commission of a tort [or breach of a contract] is always required for punitive damages."[37] Here, Barrett alleges that VCL lured him into revealing and signing over his patents by promising a joint venture when their actual intent was "unilateral control of all of

---

[32] Docket No. 21 at ¶¶ 1.36, 2.6.1-2.6.2.

[33] *See id.* at ¶¶ 1.37-1.38, 2.6.4.

[34] Cal. Civ. Code § 3294. Barrett's counterclaim pleads exclusively fraud and oppression.

[35] *Id*.

[36] *Ittella Foods, Inc. v. Zurich Ins. Co.*, 98 F. App'x 689, 690 (9th Cir. 2004) (internal quotations omitted).

[37] *Id.*

7
Case No.: 5:13-cv-03384-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS

Barrett's property for VCL'S own profit."[38]  This deliberate deception, if proven, would indeed be commonly "looked down on and despised by ordinary, decent people."[39]  While his claims do not meet the requirements for fraud, they sufficiently allege conduct that may be construed as despicable under the Ninth Circuit's precedent.  Venture's motion to dismiss the punitive damage claim therefore is DENIED.

### IV. CONCLUSION

Barrett's claims for constructive and actual fraud are DISMISSED without prejudice, but Venture's motion is DENIED as to the punitive damage claim.  Any amended pleadings shall be filed within thirty days of this order.

**IT IS SO ORDERED**

Dated:  February 5, 2014

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[38] Docket No. 21 at ¶ 2.6.9.

[39] *Ittella Foods, Inc.,* 98 F. App'x at 690.

8
Case No.: 5:13-cv-03384-PSG
ORDER GRANTING-IN-PART MOTION TO DISMISS