United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| VENTURE CORPORATION LTD., et al., | ) | Case No. 5:13-cv-03384-PSG |
| | ) | |
| Plaintiffs, | ) | **ORDER RE: MOTION TO COMPEL** |
| | ) | |
| v. | ) | **(Re: Docket No. 44)** |
| | ) | |
| JAMES P. BARRETT, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Most lawyers (and hopefully judges) would be forgiven if they could not recite on demand some of the more obscure of the Federal Rules of Civil Procedure. Rule 80 (Stenographic Transcript as Evidence) and Rule 64 (Seizing a Person or Property) come to mind. But Rule 34 (Producing Documents, Electronically Stored Information, and Tangible Things) is about as basic to any civil case as it gets. And yet, over and over again, the undersigned is confronted with misapprehension of its standards and elements by even experienced counsel. Unfortunately, this case presents yet another example.

After Defendant James P. Barrett served initial document requests and Plaintiffs Venture Corporation Ltd. and Venture Design Services, Inc. responded, the parties met and conferred about how the Ventures would produce documents.[1] So far, so good. But despite their best efforts, the

---

[1] *See* Docket No. 54 at 3.

parties could not agree.  Barrett wanted the documents organized and labeled to identify the requests to which they were responsive.[2]  The Ventures demurred at such an obligation.[3]  What followed was a production of approximately 41,000 pages, even though there was nothing close to a meeting of the minds.[4]  Because this production did not square with the requirements of either Rule 34(b)(2)(E)(i) or (ii), the Ventures shall try again, as explained below.

## I.

Even in the days of paper measured by the carton and large, cold-storage warehouses, the document dump was recognized for what it was:  at best inefficient and at worst a tactic to work over the requesting party.  Rule 34 aims to prevent such a scenario with two specific and separate requirements.  First, "[a] party must produce documents as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the request."[5]  Second, "[i]f a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.  A party need not produce the same electronically stored information in more than one form."[6]

Barrett is the owner of three patents on an air monitor and gas scrubber component.  The Ventures say those patents belong to them, and filed this suit to confirm their ownership.[7]  Barrett

---

[2] *See id.*

[3] *See id.*

[4] *See id.*

[5] Fed. R. Civ. P. 34(b)(2)(E)(i).

[6] Fed. R. Civ. P. 34(b)(2)(E)(ii).

[7] *See* Docket No. 54 at 1.

2

Case No. 5:13-cv-03384-PSG
ORDER RE:  MOTION TO COMPEL

United States District Court
For the Northern District of California

countersued, saying the Ventures welched on commitments they made to induce Barrett to assign the patents.[8]

After the initial case management conference and the filing of a scheduling order,[9] Barrett began serving document requests together with other discovery.[10] After the Ventures served objections, but no documents, the parties met by telephone.[11] What happened during that call is hotly contested. The Ventures say Barrett agreed to accept documents in bulk and in PDF or native format despite initially insisting on an identification of which documents correspond to each request.[12] Barrett denies this, saying that he only agreed to review whatever the Ventures would produce while reserving the right to later demand identification by request.[13]

What is not contested is that the Ventures proceeded to produce, on flash drive and by email, approximately 41,000 pages. The drive and email contained no custodial index, no table, no information at all—just folders of the files themselves.[14] After Barrett took various depositions, he followed up on what he understood the original deal to be by serving interrogatories requesting identification of what documents responded to various categories.[15] Barrett served the follow-up interrogatories by email pursuant to Fed. Civ. P. 5(b)(2)(E), just 30 days before the discovery cut-off set out in the court's scheduling order.[16]

---

[8] *See id.*

[9] *See* Docket No. 25.

[10] *See* Docket No. 54 at 1.

[11] *See* Docket No. 54-1 at 1.

[12] *See id.*

[13] *See* Docket No. 44 at 7, 12; Docket No. 55 at 1, 7, Docket No. 61.

[14] *See* Docket No. 54 at 1, 3, 8.

[15] *See id.*

[16] *See* Docket No. 54 at 1, 5, 7.

3

Case No. 5:13-cv-03384-PSG
ORDER RE: MOTION TO COMPEL

1    The Ventures balked at what they claim were untimely requests and more generally

2    unwarranted demands calling for document and ESI production other than as they are kept in the

3    usual course of business.[17]   Barrett then moved to compel answers to the interrogatories and

4    requests for production and sanctions in the form of attorney's fees and costs.[18]

## II.

5    The court has jurisdiction under 28 U.S.C. § 2201 and 1332(a)(1) and (2).  The parties have

6    consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).

7    The Ventures may be right that Barrett's final round of interrogatories were untimely.  By

8    serving the interrogatories by email under subsection (E) of Rule 5(b)(2), Barrett pushed the

9    Ventures' deadline to respond three days past the discovery cut-off, by operation of Rule 6(d).

10   Under Civil L.R. 37-3, "[d]iscovery requests that call for responses or depositions after the

11   applicable discovery cut-off are not enforceable, except by order of the Court for good cause

12   shown."  But the court need not resolve whether Barrett has shown good cause here, because either

13   way the Ventures' production did not square with the rules.

## III.

14   Rule 34(b)(2)(E)(i) is plain:  if documents are not organized and labeled to correspond to

15   the categories in the request, they must be produced as they are kept in the usual course of

16   business.  The Ventures did not do this.

17   *First*, there is no real dispute that the Ventures did not organize and label their production.

18   Not even the Ventures claim this.

19   *Second*, the Ventures have submitted no evidence that in the ordinary course of business

20   they keep documents and ESI in folders as they were produced.  "A party selecting the alternative

---

[17] *See id.*

[18] *See* Docket No. 44.

4

United States District Court
For the Northern District of California

method of production bears the burden of demonstrating that the documents made available were in fact produced consistent with that mandate. . . .  To carry this burden, a party must do more than merely represent to the court and the requesting party that the documents have been produced as they are maintained."[19]  At a minimum, the court would expect to see the documents and ESI kept by the name of the employee from whom the documents were obtained or at least which Venture entity had produced the documents.[20]  But here, there was nothing in the way of any such source information.

Once again, the Ventures do not dispute that their documents and ESI are kept in some more hierarchical scheme.  Instead they claim that while they offered to produce the files together with load files and an index, Barrett told them he would accept production in PDF and native form.[21]  As an initial matter, the Ventures' proof of this is thin at best.  The Ventures tender neither a contemporaneous letter nor any email following up the call between counsel. All that Venture musters is an attorney declaration prepared many months after the call and only once Barrett brought his motion.[22]  The only such contemporaneous communication is from Barrett, in which his counsel makes clear she was not agreeing to much of anything.[23]  More fundamentally, even if there was such an agreement, an agreement on form relieves a responding party of any further form obligations under subsection (ii) of Rule 34(b)(2)(E).  It does nothing to relieve such a party of its

---

[19] *See Pass & Seymour, Inc. v. Hubbell Inc.*, 255 F.R.D. 331, 334 (N.D.N.Y. 2008) (citing *Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 540-41 (D. Kan. 2006); *Cardenas v. Dorel Juvenile Group, Inc.*, 230 F.R.D. 611, 618 (D. Kan. 2005)).  *See also Google, Inc. v. American Blind & Wallpaper Factory, Inc.*, Case No. 03-cv-5340, 2006 WL 5349265, at *3 (N.D. Cal. Feb. 8, 2006).

[20] *Cf. MGP Ingredients, Inc. v. Mars, Inc.*, Case No. 06-2318-JWL-DJW, 2007 Wl 2010343, at *1 (D. Kan. Oct. 15, 2007).

[21] *See* Docket No. 54 at 3.

[22] *See* Docket No. 54-1.

[23] *See* Docket No. 56.

Case No. 5:13-cv-03384-PSG
ORDER RE:  MOTION TO COMPEL

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

obligation under subsection (i) to produce the documents and ESI as they are kept in the ordinary course of business.

   This distinction matters.  Form under subsection (ii) is about whether the production should be native, near-native, imaged as PDF (or more commonly, as TIFFs accompanied by load files containing searchable text and metadata) or in paper (printed out).[24]  Providing information about how documents and ESI are kept under subsection (i)  "[a]t a minimum . . . mean[s] that the disclosing party should provide information about each document which ideally would include, in some fashion, the identity of the custodian or person from whom the documents  were obtained, an indication of whether they are retained in hard copy or digital format, assurance that the documents have been produced in the order in which they are maintained, and a general description of the filing system from which they were recovered."[25]

   ***Third,*** because there was not even an agreement on form, Venture had an obligation under subsection (ii) to show that the production was in which "it is ordinarily maintained or in a reasonably usable form or forms."[26]  Once again, there is no serious question that a grab-bag of PDF and native files is neither how the Ventures ordinarily maintained the documents and ESI nor is "in a reasonably usuable form."[27]

## IV.

   This leaves only the question of remedy.  While Barrett wants the production organized and labeled, as he has all along, the court sees no reason to limit the remedy to only what Barrett wants.  After all, during the meet and confer, and even at the hearing on this matter, Barrett kept insisting

---

[24] *See* Craig Ball, Lawyer's Guide to Forms of Production, available at: http://www.craigball.com/Lawyers%20Guide%20to%20Forms%20of%20Production_Ver.20140512_TX.pdf (last visited 10/15/2014).

[25] *Pass & Seymour, Inc.*, 255 F.R.D. at 337.

[26] Fed. R. Civ. P. 34(b)(2) (E)(ii).

[27] *Id.*

6

Case No. 5:13-cv-03384-PSG
ORDER RE:  MOTION TO COMPEL

that organization and labeling is always required—never mind the disjunctive structure of subsection (i)'s language.  And so to remedy this situation, the Ventures shall do three things:  (1) either organize and label each document it has produced **_or_** it shall provide custodial and other organizational information along the lines outlined above **_and_** (2) produce load files for its production containing searchable text and metadata.

As for Barrett's requested fees and costs, this request is denied.  Barrett's unwillingness to accept the disjunctive nature or subsection (i), insistence on organization and labeling and delay in bringing this motion only contributed to the unfortunate situation at hand.

The Ventures shall comply with this order within 21 days.

**SO ORDERED.**

 Dated:  October 16, 2014

_PAUL S. GREWAL_
PAUL S. GREWAL
United States Magistrate Judge

Case No. 5:13-cv-03384-PSG
ORDER RE:  MOTION TO COMPEL

United States District Court
For the Northern District of California