UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VENTURE CORPORATION LTD., et al., | Case No. 5:13-cv-03384-PSG |
| Plaintiffs and Counterdefendants, | **ORDER RE:  MOTION FOR DEFAULT JUDGMENT, MOTION TO COMPEL AND MOTION FOR ATTORNEY'S FEES** |
| v. | |
| JAMES P. BARRETT, | **(Re: Docket Nos. 111, 119, 120)** |
| Defendant and Counterclaimant. | |

The deposition of patent attorney Craig Stainbrook, specially occurring after the close of discovery, has inspired a flurry of motions. Defendant and Counterclaimant James Barrett moves for default judgment[1] and Plaintiff and Counterdefendants Venture Corporation Ltd., et al., move to compel and for attorney's fees.[2] Barrett alleges that documents produced in the deposition revealed the Ventures' failure to produce relevant contracts between the Ventures and third-party Agilent Technologies. Barrett says this failure violated this court's discovery order of October 16, 2014. For this transgression, Barrett requests default judgment and fees and costs, or alternatively

---

[1] *See* Docket No. 111.

[2] *See* Docket Nos. 119, 120.  Stainbrook joins in both motions.

1
Case No. 5:13-cv-03384-PSG
ORDER RE:  MOTION FOR DEFAULT JUDGMENT, MOTION TO COMPEL AND MOTION FOR ATTORNEY'S FEES

further discovery and another opportunity for summary judgment. The Ventures in turn allege that although Stainbrook waived privilege as to "prosecution of the patents and patent application at issue,"[3] Stainbrook inadvertently disclosed to Barrett privileged documents that fall outside of that waiver. The Ventures say they timely requested that Barrett return or destroy those documents pursuant to Fed. R. Civ. P. 26(b)(5), but Barrett refused. The Ventures request that Barrett return or destroy the documents and any derivative materials.[4] They separately move for $5,000 in attorney's fees.[5]

The court GRANTS-IN-PART Barrett's motion and GRANTS the Ventures' motion to compel. Barrett is entitled to the contracts and a further deposition on the subject of those contracts. Default judgment and a second motion for summary judgment, however, are not warranted. For his part, Barrett shall destroy or return the communications and drafts that the Ventures requested. The court DENIES all parties any fees or costs.

**I.**

Fed. R. Civ. P. 37(b)(2)(A) provides remedies for violations of discovery orders, including "rendering a default judgment against the disobedient party."[6] "A court must consider the following five factors before declaring default: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions."[7]

---

[3] Docket No. 109 at ¶ 8.

[4] *See* Docket No. 119 at 7.

[5] *See* Docket No. 120.

[6] Fed. R. Civ. P. 37(b)(2)(A)(vi); *see also Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1169 (9th Cir. 2012).

[7] *Hester*, 687 F.3d at 1169.

2
Case No. 5:13-cv-03384-PSG
ORDER RE: MOTION FOR DEFAULT JUDGMENT, MOTION TO COMPEL AND MOTION FOR ATTORNEY'S FEES

Barrett requests default judgment that (1) both Ventures "waived" assignment of VDSI's invention agreement clause and are estopped from asserting that the VDSI invention agreement is the basis for the assignment of Barrett's inventions to the Ventures; and (2) the assignments of Barrett's invention rights to VCL were transferred for the consideration of the joint venture, because VCL needed to purchase the inventions to avoid Agilent.[8]  Barrett further requests that the Ventures pay all of Barrett's accrued attorney's fees and costs until the date of the disclosure and that the Ventures produce all Agilent contracts.[9]  At the very least, Barrett says he should be able to conduct one more deposition on the contracts, and file a second motion for summary judgment.[10]  As explained below, the court agrees with Barrett that relief is warranted, but only up to a point.

As an initial matter, Barrett fails to establish that the Ventures violated a court order as Rule 37 requires.  Barrett points to this court's October 14 order, but that order deals with the organization and form of the Ventures' production, not any specific failure by the Ventures to produce the disputed contracts.[11]  Even if that order did address the contracts now at issue, Barrett has not established that default is the appropriate remedy.

*First*, the public's interest in speedy resolution might normally favor Barrett, but in this case, trial is less than a month away.  The case has been active for nearly two years.  A default judgment would not materially expedite resolution.

*Second*, the court's need to manage its docket is not a significant factor.  While any hiccup in the lead-up to trial creates burdens on the court's docket, the court is fully capable of managing a trial in this case in the coming weeks.

---

[8] *See* Docket No. 111 at 9-10.

[9] *See id.*

[10] *See* Docket No. 168.

[11] *See* Docket No. 62.

3
Case No. 5:13-cv-03384-PSG
ORDER RE:  MOTION FOR DEFAULT JUDGMENT, MOTION TO COMPEL AND MOTION FOR ATTORNEY'S FEES

*Third*, the risk of prejudice to the Ventures from default is substantial.  Barrett claims great prejudice has occurred against him, because discovery and the court's summary judgment order did not address the effects of these contracts.[12]  But great prejudice also would occur against the Ventures were the court to grant default judgment and deny them of their right to trial, especially where Barrett himself pleaded that the Agilent contracts were not related to this action.[13]

*Fourth*, public policy favors a disposition of this case on its merits.  Barrett argues the trial would not be on the merits if default judgment is not granted, because Barrett did not have access to the contracts until discovery was closed and summary judgment denied.[14]  But limited additional discovery can mitigate that risk.  Barrett's proposed default would guarantee it.

*Finally*, less drastic sanctions are available.  No later than May 5, 2015, the Ventures shall produce to Barrett all contracts with Agilent involving Barrett's work group.  No later than May 8, 2015, the Ventures shall make available a Rule 30(b)(6) deponent on the subject of these contracts.  No other relief is warranted.

## II.

Fed. R. Civ. P. 26(b)(5) requires any party notified of the inadvertent production of privileged information to "promptly return, sequester, or destroy the specified information and any copies it has" and precludes that party from "us[ing] or disclos[ing] the information until the

---

[12] *See* Docket No. 111 at 10.

[13] *See* Docket No. 135 at 2; Docket No. 38 at ¶¶ 1.15, 1.16, 1.20, 1.22 ("1.15 James Barrett was absorbed from Agilent in the VDSI collaboration, and remained as VDSI's project manager in developing one specific Agilent technology, a telecommunication [*sic*] company wireless network optimization tool.  1.16. VDSI employed Barrett to perform the same project management of Agilent's communications [technology], but now as a project manager for VDSI.  1.22. In early 2005, Agilent cancelled its contract with VDSI for the Unattended Drive Test project that VDSI has been formed to perform. No other projects were on VDSI's horizon. . . . 1.20. The [MineTracer/Refuge Life Support] invention[s] had no relationship at the time of [its] conception or reduction to practice to Agilent's wireless network optimization tool for telecommunications companies, or to any anticipated research or development in that area.").

[14] *See* Docket No. 168.

4
Case No. 5:13-cv-03384-PSG
ORDER RE:  MOTION FOR DEFAULT JUDGMENT, MOTION TO COMPEL AND MOTION FOR ATTORNEY'S FEES

[privilege] claim has been resolved."[15]  Fed. R. Evid. 502(d) provides that "[a] federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court—in which even the disclosure is also not a waiver in any other federal or state proceeding."[16]  Such an order allows the clawing back of an inadvertent production of privileged material without any risk of waiver even where the producing party has not conducted any privilege review.[17]

The parties' protective order incorporates Rule 502(d) and broadens Rule 26(b)(5)'s requirement.  In this case, any recipient of documents "shall not challenge the propriety of the privilege or protection claimed on the grounds that the privilege or protection was waived by production of the documents."[18]  The protective order further states that "no use shall be made of such documents during deposition" before the recipient challenges the propriety of the privilege claim on some basis other than the production of the document.[19]  If the receiving party fails to seek or secure determination of the propriety of the privilege, then the recipient must return the privileged documents and also "confirm in writing that any analyses, memoranda or notes which were internally generated based upon such inadvertently produced information have been destroyed."[20]

Barrett might be right that the stipulated privilege waiver as to Stainbrook, Stainbrook's role as attorney to both Barrett and the Ventures and the Ventures' delay in claiming privilege have

---

[15] Fed. R. Civ. P. 26(b)(5).

[16] Fed. R. Evid. 502(d)

[17] *See Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 290 (S.D.N.Y. 2003); *accord* comments to FRE 502(d) (*citing Zubulake*).

[18] Docket No. 37 at ¶ 12.3.

[19] *Id.*

[20] *Id.*

5
Case No. 5:13-cv-03384-PSG
ORDER RE:  MOTION FOR DEFAULT JUDGMENT, MOTION TO COMPEL AND MOTION FOR ATTORNEY'S FEES

all rendered Barrett's obligations unclear.  But the protective order together with the federal rules are clear:  without any further delay, Barrett must return or destroy the documents at issue and any materials derived from them.  Given the ambiguity of the parties' stipulation and waiver, however, no fees on this issue are warranted.

**SO ORDERED.**

Dated:  April 29, 2015

                                                  _____
                                                  PAUL S. GREWAL
                                                  United States Magistrate Judge