1
2
3
4
5
6
7

**United States District Court**
For the Northern District of California

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VENTURE CORPORATION LTD., et al., | ) Case No. 5:13-cv-03384-PSG |
| Plaintiffs and Counterdefendants, | ) **[PROPOSED] JURY INSTRUCTIONS** |
| v. | ) **(Re: Docket No. 186)** |
| JAMES P. BARRETT, | ) |
| Defendant and Counterclaimant. | ) |

1

# 1.  CLAIMS AND DEFENSES

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

James P. Barrett (whom we will call "Mr. Barrett") is the named inventor on three patents. Mr. Barrett became a VDSI employee on November 1, 2003.  On June 28, 2003—before his employment with VDSI commenced—Mr. Barrett signed an Employee Confidential Information and Inventions Agreement (or simply the "2003 VDSI employee inventions agreement").  Mr. Barrett worked for VDSI from November 1, 2003 through March 20, 2013.

At some point during his employment, Mr. Barrett proposed an invention or inventions. The invention or inventions became known as MineTracer and the Refuge Life Support system. MineTracer is a wireless system for tracking the location of miners in mine shafts and tunnels.  The Refuge Life Support system has two components:  a gas monitor for sensing abnormal levels of harmful gasses in a mine, and a gas scrubber, which can filter carbon dioxide in a mine.

VCL and VDSI, on the one hand, and Mr. Barrett, on the other hand, dispute when and how the inventions came to exist and how VCL obtained ownership rights for the inventions.  I will summarize for you each side's contentions.

*Venture's Contentions*

VCL and VDSI contend that Mr. Barrett and a team of VDSI colleagues created three inventions starting in 2005, using company resources and time.  As a result, and because each of the inventions is part of a wireless network system and thus related to VDSI's business, the 2003 VDSI employee inventions agreement automatically assigned to VDSI ownership of each invention upon its creation.  VDSI, meanwhile, had assigned all of its future inventions to VCL in consideration for VCL's funding of VDSI's operations.  As a result, VCL and VDSI contend, ownership of each invention automatically passed at the time of its creation from Mr. Barrett to VDSI to VCL by operation of law.

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VCL and VDSI contend that they sought patent protection for each invention.  For the purpose of seeking patent protection for each invention, individual assignments were created and signed by Mr. Barrett and VCL.  VCL and VDSI contend that each assignment is consistent with the 2003 VDSI employee inventions agreement and was created only for purposes of satisfying U.S. Patent and Trademark Office requirements that an assignment be specific to the invention being patented.

VCL and VDSI allege that by March 2013, VDSI had invested about $15 million in developing MineTracer and the Refuge Life Support system.  Unfortunately, VDSI had not come close to selling enough MineTracer systems to break even on its investment.  And because VDSI was unable to get its Refuge Life Support system approved for use in the U.S. by the government's mine regulator ("MSHA"), VDSI could not sell them.  VDSI eventually received approval in Fall 2014.  While the MineTracer and Refuge Life Support systems were good products, VCL determined that it had an obligation to its shareholders to discontinue its increasing investments in the systems and shift focus to other areas.  VDSI thus decided to shrink its Liberty Lake operation and focus its remaining team on projects being developed by VDSI's Santa Rosa technology office.  The Santa Rosa technology office, however, already had its own manager.  As a consequence, Mr. Barrett—as the evangelist for the MineTracer and Refuge Life Support inventions and systems and leader of the team that developed and was attempting to sell them—was among those laid off.

VCL and VDSI deny the existence of any joint venture between Mr. Barrett and VCL. VCL and VDSI further contend that Mr. Barrett's claims are barred by their limitation periods.

*Mr. Barrett's Contentions*

Mr. Barrett contends that he invented the Minetracer and its components in 2003, before his employment with VDSI commenced.  Mr. Barrett contends that in 2005, he and VCL agreed to combine Mr. Barrett's 2003 inventions and skill with VCL's business partnership model to together fund, develop and commercialize Mr. Barrett's inventions for a national and international mining

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

industry market for the mutual benefit of both.  Mr. Barrett contends that he had other suitors for his inventions, including the Chinese government, but decided to solicit and use VCL as his development partner because that was VCL's business model.  Mr. Barrett claims that his partnering with VCL had the advantage of allowing Mr. Barrett to use his employment with VDSI to the benefit of all parties.  Mr. Barrett claims that at no time from 2005 to 2013 did VCL or VDSI claim to own Mr. Barrett's inventions under a 2003 VDSI employee inventions agreement.  To the contrary, Mr. Barrett contends that VCL agreed that Mr. Barrett retained all rights to his inventions, as VCL funded Mr. Barrett to individually patent his inventions in Mr. Barrett's sole name as inventor, and as both VDSI and VCL agreed in writing that Mr. Barrett continued to own all of the rights to each of his inventions until Mr. Barrett sold his rights to VCL in 2008, 2011 and 2012 by contracts prepared by VCL itself, to allow VCL to acquire his inventions for "good and valuable consideration."  Mr. Barrett claims that VCL filed these acquisition contracts with the United States Patent and Trade Office, ratifying that VCL had acquired Mr. Barrett's inventions from him for valuable consideration.  Mr. Barrett claims that VCL itself created the language of these contracts to ensure that there was no reference in them anywhere to the 2003 VDSI employee inventions agreement.  Mr. Barrett alleges that it was not until March 20, 2013 that he discovered VCL had been engaged in fraud.  Mr. Barrett claims that on March 20, 2013, he was "fired" by VCL from his position at VDSI. By then, Mr. Barrett had pursued, obtained and positioned patent protection for each of his three inventions, he had obtained regulatory certification for one invention and positioned the other two for the same imminent certification, he had developed advertising, trademarks, logos and an ongoing business with a customer base for his products, he had positioned his new products for sale, and, two days before he was fired, he had just delivered customer commitments to VCL that would generate up to $357,000,000 in revenue.  Once VCL received this work and these customer commitments, they "severed" him, offered him $22,000 to sign over all rights to VDSI and VCL, kept his inventions, his patents, his customers and their commitments and then sued him for exclusive rights to all of his inventions claiming that they have no

4

obligation to pay him any compensation for his inventions. By that date, VCL was now in a position to sell the products to others without further development needs. Mr. Barrett claims that VCL has continued to pursue his patents and certification and has continued to sell licensing rights to his products and inventions and is now negotiating to sell his inventions to one of the customers he brought to VCL. Mr. Barrett claims that it was not until after March 20, 2013, that VCL first claimed to Mr. Barrett that it had always owned Mr. Barrett's inventions because it owned them from the outset under his 2003 VDSI employee inventions agreement. Mr. Barrett claims VCL's position is inconsistent and fraudulent.

Mr. Barrett has countersued VCL, claiming breach of contracts, repudiation of the joint venture, breach of VCL's implied duty of good faith and fair dealing and fraud.

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

## 2.  PARTY HAVING POWER TO PRODUCE BETTER EVIDENCE

You may consider the ability of each party to provide evidence.  If a party provided weaker evidence when it could have provided stronger evidence, you may distrust the weaker evidence.

6

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

### 3.   BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.  You should base your decision on all of the evidence, regardless of which party presented it.

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

#### 4.   CLEAR AND CONVINCING EVIDENCE

When a party has the burden of proving any claim or defense by "clear and convincing evidence," it means you must be persuaded by the evidence that the claim is highly probable.  This is a higher standard of proof than proof by a preponderance of the evidence.  You should base your decision on all of the evidence, regardless of which party presented it.

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

### 5.   LABOR CODE § 2870

Venture claims that Mr. Barrett automatically assigned his rights to the MineTracer, Gas Scrubber and Gas Monitor inventions through the 2003 VDSI employee inventions agreement. The 2003 VDSI employee inventions agreement provides an exemption to assignment if an invention meets the provisions of California Labor Code section 2870.  Mr. Barrett claims that the three inventions meet this exception.

To prove that the three inventions are exempted from assignment under Labor Code § 2870, Mr. Barrett has the burden of proving by a preponderance of evidence that each invention:

1.   Was developed entirely on his own time, without using any of VDSI's equipment, supplies or facilities;

2.   Did not relate, at the time of the invention's conception or reduction to practice, to VDSI's business, or to VDSI's actual or the demonstrably anticipated research or development and

3.   Did not result from any work that Mr. Barrett performed for VDSI.

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

## 6.  FORFEITURE

Forfeiture means a failure to make a *timely* assertion of a right.

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

### 7.   STATUTE OF LIMITATIONS—BREACH OF 2003 VDSI EMPLOYEE INVENTIONS AGREEMENT

Mr. Barrett contends that VCL's and VDSI's lawsuit was not filed within the time set by law.  To succeed on this defense, Mr. Barrett must prove that VCL's and VDSI's claimed harm occurred before July 19, 2009.

VCL and VDSI can overcome this defense if they prove by a preponderance of the evidence that before July 19, 2009, they did not discover, and did not know the facts that would have cause a reasonable person to suspect, Mr. Barrett's wrongful act or omission.

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

United States District Court
For the Northern District of California

## 8.   JOINT VENTURE

You must decide whether a joint venture was created in this case.  A joint venture exists if all of the following have been proved:

1.   Two or more persons or business entities combine their property, skill or knowledge with the intent to carry out a single business undertaking;

2.   Each has an ownership interest in the business undertaking;

3.   They have joint control over the business undertaking, even if they agree to delegate control and

4.   They agree to share the profits and losses of the business undertaking.

A joint venture can be formed by a written or an oral agreement or by an agreement implied by the parties' conduct.

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

### 9.   JOINT VENTURE CONTRACT FORMATION

To prove that an oral joint venture agreement was created, Mr. Barrett must prove all of the following elements by a preponderance of the evidence:

1.      That the terms of the contract were clear enough that the parties could understand what each was required to do;

2.      That the parties agreed to give each other something of value and

3.      That the parties agreed to the terms of the agreement.

When you examine whether the parties agreed to the terms of the contract, ask yourself if, under the circumstances, a reasonable person would conclude, from the words and conduct of each party, that there was a contract.  You may not consider the parties' hidden intentions.  If Mr. Barrett did not prove all of the above by a preponderance of evidence, then a contract was not created.

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

## 10.  JOINT VENTURE IMPLIED-IN-FACT CONTRACT

In deciding whether an agreement was created, you should consider the conduct and relationship of the parties as well as all the circumstances of the case.

Agreements can be created by the conduct of the parties without spoken or written words. Agreements created by conduct are just as valid as contracts formed with words.

Conduct will create an agreement if the conduct of both parties is intentional, and each knows, or has reason to know, that the other party will interpret the conduct as an agreement to enter into an agreement.

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

## 11.  STATUTE OF LIMITATIONS (JOINT VENTURE)

Venture contends that Mr. Barrett's claims predicated on a joint venture with VCL were not filed within the time set by law.  To succeed on this defense, Venture must prove before September 13, 2011, Mr. Barrett knew or should have been of aware of facts that made it reasonably foreseeable to him that VCL intended to assert an ownership interest in the inventions without respect to any joint venture agreement.

Mr. Barrett can overcome this defense if he proves by a preponderance of the evidence that before September 13, 2011, he did not discover, and did not know the facts that would have cause a reasonable person to suspect, VCL's wrongful act or omission.

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

United States District Court
For the Northern District of California

## 12.  FIDUCIARY DUTY EXPLAINED

A joint adventurer owes what is known as a fiduciary duty to its co-joint adventurer.

A fiduciary duty imposes on a joint adventurer a duty to act with the utmost good faith in the best interests of his co-joint adventurer.

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 13.  AFFIRMATIVE DEFENSE—STATUTE OF LIMITATIONS—BREACH OF FIDUCIARY DUTY

VCL contends that Mr. Barrett's lawsuit was not filed within the time set by law regarding his breach of fiduciary duty claim.  To succeed on this defense, VCL must prove by a preponderance of evidence that Mr. Barrett's claimed harm occurred before September 13, 2009.

Mr. Barrett can overcome this defense if he proves by a preponderance of evidence that before September 13, 2009, he did not discover and did not know of facts that would have caused a reasonable person to suspect VCL's wrongful act or omission.

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 14.  BREACH OF CONTRACT—INTRODUCTION

Mr. Barrett alleges that VCL breached three contracts with Mr. Barrett:  (1) a December 17, 2008 contract called the Individual to Corporate Patent Rights Assignment Agreement; (2) a July 26, 2011 contract called the Individual to Corporate Patent Rights Assignment Agreement and (3) an unsigned December 18, 2012 contract called the Individual-to-Corporate Patent Rights Assignment Agreement.

Mr. Barrett claims that VCL breached these contracts by failing to perform the consideration that VCL committed to in those contracts to acquire his inventions, and that VCL's breach caused him harm.

VCL contends that that each assignment is consistent with the 2003 VDSI employee inventions agreement and was created to satisfy what VCL asserts to be U.S. Patent and Trademark Office requirements.

The parties each deny each other's claims.

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

## 15.  BREACH OF CONTRACT—ESSENTIAL FACTUAL ELEMENTS

To recover damages from VCL for breach of contract, Mr. Barrett must prove all of the following elements by a preponderance of evidence:

1.     That Mr. Barrett and VCL entered into a contract;

2.     That Mr. Barrett did all, or substantially all, of the significant things that the contract required him to do;

3.     That all conditions required by the contract for VCL's performance had occurred;

4.     That VCL failed to do something that the contract required it to do and

5.     That Mr. Barrett was harmed by that failure.

United States District Court
For the Northern District of California

**16.  INTERPRETATION—MEANING OF ORDINARY WORDS**

You should assume that the parties intended the words in their contracts to have their usual and ordinary meaning unless you decide that the parties intended the words to have a special meaning.

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

United States District Court
For the Northern District of California

## 17.  INTERPRETATION—CONSTRUCTION OF CONTRACT AS A WHOLE

In deciding what the words of a contract meant to the parties, you should consider the whole contract, not just isolated parts.  You should use each part to help you interpret the others, so that all the parts make sense when taken together.

21
Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

**18.  BREACH OF CONTRACT—INTERPRETATION CONSTRUCTION BY CONDUCT**

In deciding what the words in a contract meant to the parties, you may consider how the parties acted after the contract was created, but before any disagreement between the parties arose.

22

**19.  BREACH OF CONTRACT—INTERPRETATION REASONABLE TIME**

If a contract does not state a specific time in which the parties are to meet the requirements of the contract, then the parties must meet them within a reasonable time.

What is a "reasonable" time depends on the facts of each case, including the subject matter of the contract, the reason each party entered into the contract and the intentions of the parties at the time they entered the contract.

## 20.  INTERPRETATION—DISPUTED WORDS

Mr. Barrett and VCL dispute the meaning of the following words in each of the three assignment contracts:  "*For good and valuable consideration, acknowledged by said Assignor to have been received in full from as Assignee:*"

Mr. Barrett claims that the words mean VCL's commitment to the joint venture to develop and commercialize the inventions, which had already been underway since March 2005.

Venture claims that the "consideration" is the same consideration that VDSI provided in connection with the 2003 VDSI employee inventions agreement:  VDSI's agreement to employ and pay Mr. Barrett.  Each party must prove that his or its interpretation is correct.

In deciding what the words of a contract mean, you must decide what the parties intended at the time the contract was created.  You may consider the usual and ordinary meaning of the language used in the contract, as well as the circumstances surrounding the making of the contract.

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

United States District Court
For the Northern District of California

## 21.  BREACH OF CONTRACT—INTERPRETATION CONSTRUCTION AGAINST DRAFTER

In determining the meaning of the words of the contract, you must first consider all of the other instructions that I have given you.  If, after consideration these instructions, you still cannot agree on the meaning of the words, then you should interpret the contract against the party that drafted the disputed words.

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## 22.  BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING—ESSENTIAL FACTUAL ELEMENTS

In every contract or agreement there is an implied promise of good faith and fair dealing. This means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract; however, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract. Mr. Barrett claims that VCL violated the duty to act fairly and in good faith.  To establish this claim, Mr. Barrett must prove each of the following elements by a preponderance of the evidence:

1.      That Mr. Barrett and VCL entered into a contract;

2.      That Mr. Barrett did all, or substantially all of the significant things that the contract required him to do;

3.      That all conditions required for VCL's performance occurred;

4.      That VCL unfairly interfered with Mr. Barrett's right to receive the benefits of the contract and

5.      That Mr. Barrett was harmed by VCL's conduct.

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

**23.  AFFIRMATIVE DEFENSE—STATUTE OF LIMITATIONS—BREACH OF CONTRACT**

VCL contends that Mr. Barrett's breach of contract claims were not filed within the time set by law.  To succeed on this defense, VCL must prove by a preponderance of the evidence that before September 13, 2009, Mr. Barrett knew or should have been of aware of facts that made it reasonably foreseeable to Mr. Barrett that VCL intended to assert an ownership interest in the Minetracer invention.

Mr. Barrett can overcome this defense if he proves by a preponderance of the evidence that before July 19, 2009, he did not discover, and did not know the facts that would have cause a reasonable person to suspect, VCL's wrongful act or omission.

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

United States District Court
For the Northern District of California

### 24.  INTENTIONAL MISREPRESENTATION

Mr. Barrett claims that VCL made false representations of a joint venture arrangement that harmed him.  To establish this claim, Mr. Barrett must prove all of the following:

1.   That VCL represented either orally or by conduct to Mr. Barrett that a fact was true;

2.   That VCL's representation was false;

3.   That VCL knew that the representation was false when it made it, or that VCL made the representation recklessly and without regard for its truth;

4.   That VCL intended that Mr. Barrett rely on the representation;

5.   That Mr. Barrett reasonably relied on VCL's representation;

6.   That Mr. Barrett was harmed and

7.   That Mr. Barrett's reliance on VCL's representation was a substantial factor in causing his harm.

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

## 25.  CONCEALMENT

Mr. Barrett claims that he was harmed because VCL both concealed certain information. To establish this claim, Mr. Barrett must prove one of the following:

1.     That VCL disclosed some facts to Mr. Barrett, but intentionally failed to disclose other facts, making VCL's disclosures and omissions deceptive or

2.     That VCL and Mr. Barrett had a fiduciary relationship and that VCL intentionally failed to disclose certain facts to Mr. Barrett;

In addition, having proved one of the above, Mr. Barrett must also prove all of the following:

1.     That Mr. Barrett did not know of these concealed facts;

2.     That VCL intended to deceive Mr. Barrett by concealing these facts;

3.     That had the omitted information been disclosed, Mr. Barrett reasonably would have behaved differently;

4.     That Mr. Barrett was harmed;

5.     That VCL's concealment was a substantial factor in causing Mr. Barrett's harm.

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

## 26.  RELIANCE

Mr. Barrett relied on VCL's misrepresentation if:

1.      The misrepresentation substantially influenced him to assign his ownership interests in the inventions and

2.      He would probably not have assigned his ownership interests in the inventions without the misrepresentation.

It is not necessary for a misrepresentation to be the only reason for Mr. Barrett's conduct.

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

## 27.  REASONABLE RELIANCE

In determining whether Mr. Barrett's reliance on the misrepresentation was reasonable, he must first prove that the matter was material.  A matter is material if a reasonable person would find it important in determining his or her choice of action.

If you decide that the matter is material, you must then decide whether it was reasonable for Mr. Barrett to rely on the misrepresentation.  In making this decision, take into consideration Mr. Barrett's intelligence, knowledge, education and experience.

However, it is not reasonable for anyone to rely on a misrepresentation that is preposterous. It also is not reasonable for anyone to rely on a misrepresentation if facts that are within his observation show that it is obviously false.

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

United States District Court
For the Northern District of California

## 28.  AGENT AND PRINCIPAL—DEFINITION

An agent is a person who performs services for another person under an express or implied agreement and who is subject to the other's control or right to control the manner and means of performing the services.  The other person is called a principal.  An agency agreement may be oral or written.

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

United States District Court
For the Northern District of California

**29.  DAMAGES—PROOF**

It is the duty of the court to instruct you about the measure of damages.  By instructing you on damages, the court does not mean to suggest for which party your verdict should be rendered.

If you find that VCL is liable to Mr. Barrett on any of his claims, you must determine his damages.  Mr. Barrett has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate him for any injury you find was caused by VCL.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 30.  INTRODUCTION TO CONTRACT DAMAGES

If you decide that Mr. Barrett has proved any of his claims against VCL for breach of contract, you also must decide how much money will reasonably compensate Mr. Barrett for the harm caused by the breach.  This compensation is called "damages."  The purpose of such damages is to put Mr. Barrett in as good a position as he would have been if VCL had performed as promised.

To recover damages for any harm, Mr. Barrett must prove that when the contract was made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as result of the breach of the contract.

Mr. Barrett also must prove the amount of its damages according to the following instructions.  He does not have to prove the exact amount of damages.  You must not speculate or guess in awarding damages.

Mr. Barrett claims damages for VCL's alleged breaches of the 1) a December 17, 2008 contract called the Individual to Corporate Patent Rights Assignment Agreement; (2) a July 26, 2011 contract called the Individual to Corporate Patent Rights Assignment Agreement and (3) an unsigned December 18, 2012 contract called the Individual-to-Corporate Patent Rights Assignment Agreement.

34

## 31.  GENERAL DAMAGES—BREACH OF CONTRACT

The measure of damages for the breach of a contract is the amount which will compensate the injured party for all the loss caused by the breach, or which in the ordinary course of things, would be likely to result therefrom.  The injured party should receive those damages naturally arising from the breach, or those damages which might have been reasonably contemplated or foreseen by both parties, at the time they made the contract, as the probable result of the breach.  As nearly as possible, the injured party should receive the equivalent of the benefits of performance.  Damages must be reasonable.  Mr. Barrett cannot recover a greater amount of damages that he could have gained by the full performance of the contract.

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

### 32.  DAMAGES—"BENEFIT OF THE BARGAIN" RULE

If you decide that Mr. Barrett has proved his fraud claim or breach of fiduciary duty claim against VCL, you also must decide how much money will reasonably compensate Mr. Barrett for the harm.  This compensation is called "damages."

The amount of damages must include an award for all harm that VCL was a substantial factor in causing, even if the particular harm could not have been anticipated.

Mr. Barrett must prove the amount of his damages.  However, Mr. Barrett does not have to prove the exact amount of damages that will provide reasonable compensation for the harm.  You must not speculate or guess in awarding damages.

To determine the amount of damages, you must:

1.      Determine the fair market value that Mr. Barrett would have received if the representations made by VCL had been true and

2.      Subtract the fair market value of what he did receive.

The resulting amount is Mr. Barrett's damages.  "Fair market value" is the highest price that a willing buyer would have paid to a willing seller, assuming:

1.      That there is no pressure on either one to buy or sell and

2.      That the buyer and seller know all the uses and purposes for which Mr. Barrett's share of profits are reasonably capable of being used.

Fair market value must be determined as of the date that Mr. Barrett discovered VCL's false representation.

Mr. Barrett may also recover amounts that he reasonably spent in reliance on VCL's false representation if those amounts would not otherwise have been spent.

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

**33.  LOSS OF PROFITS**

To recover damages for lost profits, Mr. Barrett must prove that it is reasonably certain that the Barrett-VCL joint venture would have earned profits and that he would have received profits from the Barrett-VCL joint venture but for VCL's breach of contract, fraud or breach of fiduciary duty.

To decide the amount of damages for lost profits, you must determine the gross amount that the joint venture would have received but for VCL's conduct.  You must then subtract from that amount the total amount of expenses that the joint venture would have incurred but for VCL's conduct.  If the resulting total is a positive number, you must divide that total in half to determine the amount of Mr. Barrett's lost profits.

You do not have to calculate the amount of the lost profits with mathematical precision, but there must be a reasonable basis for computing the loss.

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

### 34.  INTERPRETATION OF PROFITS BY REPUDIATED-ESTABLISHED BUSINESS

It is enough to demonstrate a reasonable probability that profits would have been earned except for VCL's conduct.  Mr. Barrett has the burden to produce the best evidence available in the circumstances to establish his claim for loss of profits.

Where operation of an established business is prevented or interrupted by a repudiation of the joint venture or a fraud, damages for the loss of perspective profits that otherwise might have been made from its operation are generally recoverable for the reason that their occurrence and extent may be ascertained with reasonable certainty from the past volume of business, and other provable data relevant to the probable future sales.

38

1

**35.  DAMAGES—DISCOUNT TO PRESENT CASH VALUE**

2

Any damages award must be for the present cash value of those damages.

3

Present cash value means the sum of money needed now, which, when invested at the

4

reasonable rate of return, will pay at the times and in the amounts that you find would have been

5

incurred.

6

The rate of return to be applied in determining present cash value should be the interest that

7

can reasonably be expected from safe investments that can be made by a person of ordinary

8

prudence, who has ordinary financial experience and skill.  You should also consider decreases in

9

the value of money which may be caused by future inflation.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

## 36.  DAMAGES ON MULTIPLE LEGAL THEORIES

Mr. Barrett seeks damages from VCL under more than one legal theory.  However, each item of damages may be awarded only once, regardless of the number of legal theories alleged.

You will be asked to decide whether VCL is liable to Mr. Barrett under the following legal theories:

1.  Breach of fiduciary duty;

2.  Fraud;

3.  Breach of the three contracts – (1) a December 17, 2008 contract called the Individual to Corporate Patent Rights Assignment Agreement; (2) a July 26, 2011 contract called the Individual to Corporate Patent Rights Assignment Agreement and (3) an unsigned December 18, 2012 contract called the Individual-to-Corporate Patent Rights Assignment Agreement and

4.  Breach of the implied covenant of good faith and fair dealing in the three assignment agreements.

The following items of damages are recoverable only once under all of the above legal theories:

1.  Lost profits;

2.  Benefit of the bargain damages.

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

United States District Court
For the Northern District of California

**37.  PHYSICAL PAIN, MENTAL SUFFERING AND EMOTIONAL DISTRESS (NONECONOMIC DAMAGE)**

If you find that Mr. Barrett was damaged by a breach of fiduciary duty or fraud, then Mr. Barrett is also entitled to damages for pain and suffering.

These damages include past and future humiliation/emotional distress/stress, anger/betrayal, etc.

No fixed standard exists for deciding the amount of these noneconomic damages.  You must use your judgment to decide a reasonable amount based on the evidence and your common sense.

To recover for future pain and suffering, Mr. Barrett must prove that he is reasonably certain to suffer that harm.

For future pain and suffering, determine the amount in current dollars paid at the time of judgment that will compensate Mr. Barrett for future pain and suffering.

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

United States District Court
For the Northern District of California

**38.  PUNITIVE DAMAGES—ENTITY—TRIAL NOT BIFURCATED CHALLENGED**

If you decide that VCL's fraud caused Mr. Barrett harm, you must decide whether that conduct justifies an award of punitive damages.  The purpose of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future. You may award punitive damages against VCL only if Mr. Barrett proves that VCL engaged in that conduct with malice, oppression or fraud.  To do this, Mr. Barrett must prove one of the following by clear and convincing evidence:

1)      That the conduct constituting fraud was committed by one or more officers, directors, or managing agents of VCL, who acted on behalf of VCL or

2)      That the conduct constituting fraud was authorized by one or more officers, directors or managing agents of VCL or

3)      That one or more officers, directors or managing agents of VCL knew of the conduct constituting fraud, and adopted or approved that conduct after it occurred.

"Fraud" means that VCL intentionally misrepresented or concealed a material fact, and did so intending to harm Mr. Barrett.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages.  If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

a)      How reprehensible was VCL's conduct?  In deciding how reprehensible VCL's conduct was, you may consider, among other factors:

1)      Whether the conduct caused physical harm;

2)      Whether VCL disregarded the health or safety of others;

3)      Whether Mr. Barrett was financially weak or vulnerable, and VCL knew Mr. Barrett was financially weak or vulnerable, and took advantage of him;

4)      Whether VCL's conduct involved a pattern or practice and

42

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

      5)      Whether VCL acted with trickery or deceit.

     b)      Is there a reasonable relationship between the amount of punitive damages and Mr. Barrett's harm?

     c)      In view of VCL's financial condition, what amount is necessary to punish it, and discourage future wrongful conduct?  You may not increase the punitive award above an amount that is otherwise appropriate merely because VCL has substantial financial resources.  Any award you impose may not exceed VCL's ability to pay.

43

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

1    **SO ORDERED.**

2     Dated:  June 4, 2015

3                                                        _____
                                                         PAUL S. GREWAL
4                                                        United States Magistrate Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:13-cv-03384-PSG
[PROPOSED] JURY INSTRUCTIONS

*United States District Court*
*For the Northern District of California*