UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VENTURE CORPORATION, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>JAMES P. BARRETT,<br><br>　　　　Defendant. | Case No. 5:13-cv-03384-PSG<br><br>**ORDER GRANTING JUDGMENT AS A MATTER OF LAW**<br><br>**(Re:  Docket No. 261)** |

　　In sport, to forfeit is to lose as penalty for wrongdoing or inaction.  Think of the forlorn youth soccer coach, who cannot muster enough players on a holiday weekend.  In law, to forfeit is to fail to make a timely assertion of a right.  The pending motion is focused on one particular legal question concerning forfeiture: does California law allow the forfeiture of ownership rights in inventions that passed by operation of a contract?

　　A jury found that Defendant James P. Barrett had developed inventions, in whole or in part, on the time of his then-employer, Plaintiff Venture Design Services, Inc., or by using VDSI's equipment, supplies, or facilities.[1]  The jury also found, however, that VDSI had forfeited its ownership rights in each invention.[2]  In an effort to reconcile these two findings, VDSI and Plaintiff Venture Corporation Ltd. renew their motion for judgment as a matter of law under Fed. R. Civ. P. 50(b), arguing that Barrett's forfeiture defense was inapplicable as a matter of law and that no reasonable jury could have found that VDSI forfeited its ownership rights.[3]

---

[1] *See* Docket No. 238 at 3.

[2] *See id.* at 4.

[3] *See* Docket No. 261.  Barrett argues that VCL lacks standing for this motion, because VCL was

1
Case No. 5:13-cv-03384-PSG
ORDER GRANTING JUDGMENT AS A MATTER OF LAW

The Ventures' motion is GRANTED, as explained below.

**I.**

Although patents are creatures of federal law, state law nevertheless plays an important role in patent ownership disputes. "Usually, federal law is used to determine the validity and terms of an assignment," but patent ownership is determined by state law.[4] In California, Cal. Labor Code § 2870(a) restricts employee assignment contracts and provides:

> (a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:
>
>   (1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or
>
>   (2) Result from any work performed by the employee for the employer.
>
> (b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.

VDSI is a California-based corporation. On November 1, 2003 Barrett began working for VDSI after VDSI acquired the business of Barrett's previous employer. As a condition of his employment, Barrett signed an "Inventions Agreement."[5] The Inventions Agreement contains several key provisions relating to the disclosure of any inventions and the assignment to VDSI of Barrett's rights to any such invention. With regard to disclosure, Section 3.1 provides:

> [Barrett] will disclose promptly to the proper officers or attorneys of the Company in writing any idea, invention, work of authorship (including, but not limited to, computer

---

not a party to the Inventions Agreement. *See* Docket No. 274 at 6. The court nonetheless may decide the motion on its merits, because VDSI and VCL jointly brought the motion, and there is no question that VDSI has standing to assert its rights under a contract to which it is a party.

[4] *Sky Technologies LLC v. SAP AG,* 576 F.3d 1374, 1379 (Fed. Cir. 2009); *see also Network Prot. Sciences, LLC v. Fortinet, Inc.*, Case No. 3:12-cv-01106-WHA, 2013 WL 4479336, at *4 (N.D. Cal. Aug. 20, 2013).

[5] *See* Docket No. 11 at ¶ 15.

2
Case No. 5:13-cv-03384-PSG
ORDER GRANTING JUDGMENT AS A MATTER OF LAW

programs, software and documentation), formula, device, improvement, method, process or discovery, whether or not patentable or copyrightable (any of the foregoing items hereinafter referred to as an "Invention"), [he] may conceive, make, develop or work on, in whole or in part, solely or jointly with others during the term of [his] employment with the Company. The disclosure required by this Section applies: (a) during the term of my employment and for six months thereafter; (b) during my regular hours of employment and to my time away from work; (c) whether or not the Invention was made at the suggestion of the Company; (d) whether or not the Invention was reduced to drawings, written description, documentation, models or other tangible form; and (e) to any Invention which, in the opinion of the Company, is related to the company because it is related:

i. to the general line of business engaged in by the Company;

ii. to any actual or anticipated business (including research and development) of the Company; or

iii. to suggestions made by the Company or which resulted from any work assigned by or performed for the Company.[6]

Section 3.2, which covers the assignment of rights to which Barrett agreed, provides that:

[Barrett] hereby assign[s] to the Company without royalty or any other further consideration my entire right, title and interest in and to any Invention [Barrett is] required to disclose under Section 3.1; provided, that [Barrett] acknowledge[s] and agree[s] that the Company has hereby notified me that the assignment provided for in this Section 3.2 does not apply to any Invention which qualifies fully for exemption from assignment under the provisions of Section 2870 of the California Labor Code, a copy of which is attached hereto as Exhibit 3.2.[7]

In 2005, Barrett disclosed the first of the three inventions in dispute in this case.[8] The parties refer to the inventions as "MineTracer," U.S. Patent No. 8,294,568; a "Toxic Gas Removal and Air Conditioning System for Human Life Support in Enclosed Refuge Spaces" (the "Gas Scrubbing" system), U.S. Patent Application No. US2012/0304866A1; and "Gas Monitoring System with Oxygen Control for Human Life Support in Enclosed Refuge Space" (the "Gas Monitoring" system), U.S. Patent Application No. US2013/0153060A1.[9] According to Barrett,

---

[6] Docket No. 1-4 at 1-2.

[7] *Id.* at 2.

[8] *See* Docket No. 11 at 3.4.

[9] *See id.* at 3.1-3.3.

his purpose in disclosing these inventions and later assigning all patent rights in these inventions was not to satisfy any obligation to VDSI under Section 3.2 of the Inventions Agreement, as the Ventures claim, but rather as part of a separate joint venture he agreed to with VCL, VDSI's parent corporation.[10]  In any event, after VDSI terminated Barrett in 2013, Barrett asserted that his patent assignments to VCL were not effective.[11]

The Ventures then filed suit for a declaration that Barrett has no ownership or other rights in either the patent or the patent applications.[12]  Barrett counterclaimed, alleging breach of fiduciary duty arising from a joint venture; repudiation of a joint venture; conversion; breach of contract; breach of the implied covenant of good faith and fair dealing; unjust enrichment; constructive fraud and actual fraud.[13]  Each counterclaim sought as its remedy one-half of profits that the Ventures made based on sales of products embodying the inventions.[14]

At the summary judgment stage, the court held that it was undisputed that Barrett had assigned his inventions under Section 3.2 of the Inventions Agreement "unless otherwise precluded by law from doing so," but that it was "genuinely disputed whether Barrett was precluded under Section 2870 from assigning his inventions."[15]  The question of whether Section 2870 exempted the three inventions from the assignment clause therefore was tried to the jury.

At trial, the court instructed the jury on Section 2870 as follows:

---

[10] *See id.* at 3.8.  During the course of this case, the Patent and Trademark Office issued U.S. Patent Application No. US20120304866A1 as U.S. Patent No. 8,858,688.  *See* Docket No. 86 at 1 n.1.

[11] *See* Docket No. 1 at ¶¶ 2, 23; Docket No. 66 at 13; Docket No. 87 at 17.

[12] *See* Docket No. 1.

[13] *See* Docket No. 11.

[14] *See* Docket No. 38 at 54-55, ¶¶ 8.1-8.5 (describing the relief sought).

[15] *See* Docket No. 98 at 6 (citing *DDB Techs. LLC v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008)).

4
Case No. 5:13-cv-03384-PSG
ORDER GRANTING JUDGMENT AS A MATTER OF LAW

### 5. LABOR CODE § 2870

Venture claims that Mr. Barrett automatically assigned his rights to the MineTracer, Gas Scrubber and Gas Monitor inventions through the 2003 VDSI employee inventions agreement. The 2003 VDSI employee inventions agreement provides an exemption to assignment if an invention meets the provisions of California Labor Code section 2870. Mr. Barrett claims that the three inventions meet this exception.

To prove that the three inventions are exempted from assignment under Labor Code § 2870, Mr. Barrett has the burden of proving by a preponderance of evidence that each invention:

1. Was developed entirely on his own time, without using any of VDSI's equipment, supplies or facilities;

2. Did not relate, at the time of the invention's conception or reduction to practice, to VDSI's business, or to VDSI's actual or the demonstrably anticipated research or development and

3. Did not result from any work that Mr. Barrett performed for VDSI.[16]

The court separately instructed the jury on Barrett's defense of "forfeiture," another issue on which the court declined to grant summary judgment:[17]

### 6. FORFEITURE

Forfeiture means a failure to make a *timely* assertion of a right.[18]

As part of its verdict, the jury found it more likely true than not that Barrett had developed all three inventions "in whole or in part, on the time of [VDSI], or using any of VDSI's equipment, supplies or facilities."[19]  The jury also found that VDSI had "forfeited its right to ownership of [the three] inventions under the 2003 VDSI employee inventions agreement."[20]

---

[16] *See* Docket No. 234 at 9.

[17] *See* Docket No. 98 at 6, 10-11.

[18] *See* Docket No. 234 at 10.

[19] *See* Docket No. 238 at 3.

[20] *See id.* at 4.

Case No. 5:13-cv-03384-PSG
ORDER GRANTING JUDGMENT AS A MATTER OF LAW

5

## II.

This court has jurisdiction under 28 U.S.C. §§ 1331, 1367, and 2201. The parties consented to the undersigned's jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[21]

Fed. R. Civ. P. 50(b) provides that, upon a renewed motion for judgment as a matter of law, the court may: (1) "allow judgment on the verdict, if the jury returned a verdict," (2) "order a new trial," or (3) "direct the entry of judgment as a matter of law." To grant a Rule 50(b) motion, the court must determine that "the evidence, construed in the light most favorable to the non-moving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's."[22] In other words, to set aside the verdict, there must be an absence of "substantial evidence"—meaning "relevant evidence that a reasonable mind would accept as adequate to support a conclusion"—to support the jury's verdict.[23] "Substantial evidence is more than a mere" scintilla;[24] it constitutes "such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence."[25] In reviewing a motion for judgment as a matter of law, the court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."[26] "In ruling on such a motion, the trial court may not weigh the evidence or assess the credibility of witnesses in

---

[21] *See* Docket Nos. 14, 15.

[22] *Callicrate v. Wadsworth Mfg.*, 427 F.3d 1361, 1366 (Fed. Cir. 2005) (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)).

[23] *Id.*

[24] *Chisholm Bris. Farm Equip. Co. v. Int'l Harvester Co.*, 498 F.2d 1137, 1140 (9th Cir. 1974) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[25] *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).

[26] *Transbay Auto Serv., Inc. v. Chevron U.S.A., Inc.*, Case No. 3:09-cv-04932 SI, 2013 WL 496098, at *2 (N.D. Cal. Feb. 7, 2013) (quoting *Josephs v. Pacific Bell,* 443 F.3d 1050, 1062 (9th Cir. 2006) ("We must view the evidence in the light most favorable to the nonmoving party—here, Josephs,—and draw all reasonable inferences in that party's favor.")).

determining whether substantial evidence exists to support the verdict."[27]

### III.

Applying the standards as set forth above, it is clear that the record lends insufficient support to the jury's forfeiture finding.

*First*, by agreeing to the Inventions Agreement, Barrett immediately assigned his "entire right, title and interest in and to" the three inventions to VDSI, so long as Section 2870 did not bar the assignment.[28] In order for Section 2870 to bar the assignment, Barrett had to have developed the inventions "entirely on his . . . own time without using [VDSI's] equipment, supplies, facilities, or trade secret information."[29] The jury found, however, that Barrett had developed each invention "in whole or in part, on the time of [VDSI], or using any of VDSI's equipment, supplies or facilities."[30] Because Section 2870 did not exempt any of the inventions from the assignment clause, the Inventions Agreement assigned Barrett's entire right, title, and interest in and to all three inventions to VDSI. These rights then transferred to VCL by the similar automatic assignment clause in the Research and Development Services Agreement between VDSI and VCL.[31]

*Second*, under the language of the Inventions Agreement, the assignment was automatic and occurred "by operation of law."[32] "If the contract expressly grants rights in future inventions, 'no further act [is] required once an invention [comes] into being,' and 'the transfer of title

---

[27] *Id.* (citing *Mosesian v. Peat, Marwick, Mitchell & Co.,* 727 F.2d 873, 877 (9th Cir. 1984) ("Neither the district court nor this court may weigh the evidence or order a result it finds more reasonable if substantial evidence supports the jury verdict.")).

[28] Docket No. 7-4 at § 3.2.

[29] Cal. Labor Code § 2870.

[30] Docket No. 238 at 3.

[31] *See* Docket No. 86-4 at § 3.6.

[32] *FilmTec Corp.*, 939 F.2d at 1573.

[occurs] by operation of law.'"[33]  The Federal Circuit looks to the tense of an assignment clause to determine whether an assignment of patent rights is a present assignment, which requires "no further act . . . once an invention [comes] into being,"[34] or a future assignment, which vests the promisee with equitable rights but not legal title to patents on the inventions.[35]  Present-tense language such as "[the inventor] *agrees* to grant and *does* hereby grant [all rights in future inventions]"[36] or "[the employee] hereby *conveys*, *transfers*, and *assigns* to [employer] . . . all right, title and interest in and to Inventions"[37] creates a present assignment, while contract language requiring future action creates a future assignment.[38]  The Inventions Agreement assignment clause uses present tense language ("I hereby assign to [VDSI] . . . my entire right, title and interest"),[39] and so Barrett's right, title, and interest in the three inventions was assigned to VDSI "by operation of law"[40] as each invention came into being, without any further act required on VDSI's part.[41]  Put another way, there was nothing further for VDSI to "assert," as the standard

---

[33] *DDB Techs., L.L.C.*, 517 F.3d at 1290 (quoting *FilmTec Corp. v. Allied-Signal Inc.*, 939 F.2d 1568, 1573 (Fed. Cir. 1991)); *see also Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1253 (Fed. Cir. 2000).

[34] *Id.*

[35] *DDB Techs., L.L.C.*, 517 F.3d at 1290 (citing *Arachnid, Inc.*, 939 F.2d at 1581).

[36] *FilmTec Corp.*, 939 F.2d at 1573 (emphasis added).

[37] *Speedplay*, 211 F.3d at 1253 (emphasis added).

[38] *See, e.g.*, *Arachnid*, 939 F.2d at 1581 (an assignment clause providing that "all rights . . . *will be* assigned by [inventor]" merely obligated the inventor to grant rights in the future but did not vest legal title in the promisee) (emphasis added).

[39] Docket No. 7-4 at § 3.2.

[40] *FilmTec Corp.*, 939 F.2d at 1573.

[41] Barrett argues that the jury "never found that VDSI was automatically assigned [his] rights." Docket No. 274 at 14.  Barrett reads Section 3.1, the disclosure clause, and Section 3.2, the assignment clause, to mean that the inventions would be assigned only if Barrett actually disclosed the inventions. *See id.* at 15.  However, the assignment clause is worded more broadly and states that Barret assigns his right, title, and interest "in and to any Invention [he is] required to disclose

1    for forfeiture under California law requires.

2    ***Third***, even if forfeiture could potentially apply, Barrett fails to direct the court to any evidence of VDSI's delay.  He cites to no transcript pages and no trial exhibits to show that substantial evidence supported the jury's verdict.  Rather, he only offers his characterizations of evidence, such as his interpretation of conversations between VDSI and VCL about the ownership of the inventions.[42]  However, this is insufficient; Barrett has not identified any piece of evidence even suggesting that any of VDSI's behavior was inconsistent with its rights under the Inventions Agreement.

A final point.  Barrett repeatedly asserts that VDSI and VCL each claims ownership of the inventions and the resulting patents, and his opposition to the Ventures' motion rests on this flawed interpretation of the case.[43]  From the very beginning of this case, however, the Ventures have consistently maintained that Barrett assigned the inventions to VDSI under the Inventions Agreement, and that VDSI then assigned the inventions to VCL under the R&D Services Agreement.[44]  The Ventures never deviated from this position, and Barrett offers no evidence to the contrary.  In any event, the jury specifically rejected the notion that Barrett and VCL ever formed any joint venture that would provide a means of transferring any rights to Barrett's inventions directly from Barrett to VCL.[45]

---

under Section 3.1," without limiting the assignment only to the inventions he actually discloses. Docket No. 7-4 at § 3.2.  The jury's finding that Section 2870 does not apply to the three inventions thus means that Barrett assigned his rights in those inventions to VDSI.

[42] *See* Docket No. 274 at 12-13.

[43] *See id.* at 3-13.

[44] *See* Docket No. 6 at ¶¶ 6, 17-22.

[45] *See* Docket No. 238 at 5.

9
Case No. 5:13-cv-03384-PSG
ORDER GRANTING JUDGMENT AS A MATTER OF LAW

1  **SO ORDERED.**

2  Dated: December 9, 2015

3  _____
   PAUL S. GREWAL
4  United States Magistrate Judge

10
Case No. 5:13-cv-03384-PSG
ORDER GRANTING JUDGMENT AS A MATTER OF LAW