UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VENTURE CORPORATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES P. BARRETT,<br><br>Defendant. | Case No.13-cv-03384-HRL<br><br>**ORDER ON PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. No. 316 |

Venture Corporation Ltd. ("VCL") and Venture Design Services, Inc. ("VDSI") (collectively "Plaintiffs") renew their motion for an award of attorneys' fees from the defendant, James P. Barrett ("Barrett"). For the reasons explained below, the Court grants the motion but adjusts the fee award.

**I.    BACKGROUND**

Barrett is an engineer and inventor who worked for VDSI. As a condition of his employment, Barrett signed an agreement (the "Inventions Agreement") by which he assigned to VDSI all of his rights in any inventions he produced on the company's time. Dkt. Nos 278 at 3; 316-3, Ex. 1 § 3.2. VDSI, meanwhile, assigned its rights in Barrett's inventions to its parent company, VCL (the "R&D Agreement"). Dkt. No. 278 at 7. The Inventions Agreement provided for an award of attorneys' fees in any action on the contract. Dkt. No. 279 at 2.

While working at VDSI, Barrett developed three devices designed to improve mine safety. After his employment ended, Barrett claimed that he, and not Plaintiffs, owned the three inventions. Plaintiffs sued, Barrett counterclaimed, and the case went to trial before a jury. The jury found that Barrett assigned his rights in the inventions to VDSI, but that VDSI had forfeited its ownership rights in each invention. Dkt. No. 238. Plaintiffs made a renewed motion for judgment as a matter of law. Judge Grewal, then the presiding judge in this matter, concluded that

1 under the Inventions Agreement, Barrett's rights in the inventions automatically transferred to

2 VDSI. Then, under the R&D Agreement, VDSI's rights automatically transferred to VCL. In

3 light of this two-step, automatic assignment process, VDSI had no rights to forfeit, so Judge

4 Grewal granted the motion and entered judgment in favor of Plaintiffs. Dkt. No. 278.

Plaintiffs moved for an award of attorneys' fees. Judge Grewal first determined that the Inventions Agreement provided for attorneys' fees and that Plaintiffs were the prevailing parties in this case within the meaning of California Civil Code § 1717. That provision states, "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded . . . then the party who is determined to be the party prevailing on the contract . . . shall be entitled to reasonable attorney's fees in addition to other costs." Cal. Civ. Code § 1717(a). But Judge Grewal declined to actually award any fees. Plaintiffs, anticipating an appeal by Barrett, did not submit timesheets detailing their work on the case. Without timesheets, neither Barrett nor the court could assess the reasonableness of the requested fees. Judge Grewal therefore denied the attorneys' fees motion "without prejudice to renewal, within fourteen days of . . . the resolution of any appeal." Dkt. No. 279 at 3.

Barrett appealed and the Ninth Circuit affirmed. In particular, the Court of Appeals agreed with Judge Grewal's conclusion that Plaintiffs were the prevailing parties in this action under § 1717. *Venture Corp., Ltd v. Barrett*, 694 F. App'x 597, 599 (2017)

Plaintiffs then timely renewed their motion for an award of attorneys' fees. Dkt. No. 316. Barrett opposed, Dkt. No. 321, and the Court heard oral arguments from both sides at a hearing on December 12, 2017.

## II. DISCUSSION

### A. Attorneys' Fees Under California Civil Code § 1717

Section 1717 of the California Civil Code states that in any action on a contract, where the contract specifically provides for the award of attorney fees and costs, the court shall award reasonable fees to the prevailing party. Cal. Civ. Code § 1717(a). Once the prevailing party is identified, the court sets fees with lodestar approach, *i.e.*, the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S.

2

424, 433 (1983), *abrogated in part on other grounds by Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782 (1989); *see also PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 ("the fee setting inquiry in California ordinarily begins with the 'lodestar' . . . ."). "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 433. The calculation of reasonable fees is within the sound discretion of the trial court. *PLCM Grp.*, 22 Cal. 4th at 1094-95.

The Court agrees with Judge Grewal that the Inventions Agreement calls for an award of attorneys' fees in this case, and that Plaintiffs are the prevailing parties within the meaning of § 1717. Plaintiffs "established the central thrust of their campaign that ownership of the inventions was automatically assigned by operation of law from Barrett to VDSI and VDSI to VCL." Dkt. No. 279 at 2; *see also Berkla v. Corel Corp.*, 302 F.3d 909, 920 (9th Cir. 2002) (c*iting Hsu v. Abbara*, 9 Cal. 4th 863 (1995)) (describing standard for identifying prevailing party). The main remaining question is whether Plaintiffs have adequately established the reasonableness of the requested fees. But first the Court addresses various arguments, raised by Barrett in his opposition, that Plaintiffs either are not entitled to any fees or that any fee award must distinguish between VDSI and VCL.

### B. The Ninth Circuit's Decision Does Not Preclude Plaintiffs from Renewing Their Attorneys' Fees Motion

Barrett argues that the Court cannot adjudicate this motion because the Ninth Circuit's decision ended the case. The Court disagrees.

As Barrett notes, the rule of mandate precludes a district court from reconsidering matters that were decided on appeal. *See Mendez-Gutierrez v. Gonzales*, 444 F.3d 1168, 1172 (9th Cir. 2006). Barrett contends that this rule requires the Court to deny the present motion because the Ninth Circuit did not itself award attorneys' fees, and because the court did not remand the case with instructions to reconsider Plaintiffs' earlier request for fees. Dkt. No. 321 at 5-6. However, the relevant question on appeal was not how much in fees Plaintiffs might be awarded, but whether Plaintiffs were the prevailing parties. On that question, the Ninth Circuit agreed with Plaintiffs and Judge Grewal, who denied the original motion without prejudice, subject to

3

Plaintiffs timely renewing the motion after appeal. Dkt. No. 279 at 3. To be sure, the Ninth Circuit did not expressly order the district court to again take up the question of attorneys' fees, but that does not somehow transform Judge Grewal's earlier denial without prejudice into something else. After the appeal, Plaintiffs timely renewed their motion, so the matter is properly before the Court.

### C. Judicial Estoppel Does Not Bar the Award of Attorneys' Fees

Barrett also argues that judicial estoppel bars the award of attorneys' fees. Barrett directs the Court to the statements of several of Plaintiffs' witnesses, who claimed at trial that VDSI owned the rights to the three inventions. *See, e.g.*, Dkt. No. 319-3, Ex. C ("The right to the invention was owned by [VDSI] by virtue of the agreement."). On appeal, however, Plaintiffs allegedly changed course. Plaintiffs told the Ninth Circuit that VDSI could not have forfeited its rights to the inventions because "VDSI had no ownership interest to waive or forfeit." Dkt. No. 321 at 9. Barrett argues that Plaintiffs engaged in "duplicity" and should therefore be denied any fees. *Id.* at 10.

Barrett made similar arguments to Judge Grewal, who rightly rejected them as reflecting a "flawed interpretation of the case." Dkt. No. 278 at 9. "From the very beginning of this case," he wrote, "[Plaintiffs] have consistently maintained that Barrett assigned the inventions to VDSI under the Inventions Agreement, and that VDSI then assigned the inventions to VCL under the [R&D Agreement]. [Plaintiffs] never deviated from this position, and Barrett offers no evidence to the contrary." *Id.*

Barrett's argument has no more force now than it did before. To reiterate Judge Grewal's point, Plaintiffs argued that VDSI *did* own Barrett's inventions, at least in the sense that Barrett assigned his rights to VDSI under the Inventions Agreement. Plaintiffs also argued that VDSI did not have the *kind* of ownership that would have allowed for forfeiture, because VDSI automatically assigned all of its rights to VCL. The Court sees no evidence that Plaintiffs have been anything other than consistent on these points, so it rejects Barrett's estoppel argument.

### D. VCL and VDSI Are Both Entitled to Fees

Finally, Barrett argues that neither VDSI nor VCL is contractually entitled to attorneys'

fees. VCL, according to Barrett, had no contract with Barrett containing an attorneys' fees provision, so the company has no standing to bring this motion. VDSI, meanwhile, did have a contract with Barrett, but it disclaimed any right to attorneys' fees when it acknowledged never having any interest in Barrett's inventions. The latter portion of this argument is based on the same flawed interpretation of the case underlying Barrett's judicial estoppel argument. The question remains, however, whether both Plaintiffs are entitled to fees under § 1717 or whether Plaintifs must segregate between fees incurred by VDSI and VCL.

Judge Grewal briefly addressed this issue when he denied Plaintiffs' original attorneys' fees motion. "Barrett argues that VCL lacks standing for this motion and any right to fees, because VCL is not party to any contract with a fee-shifting clause. However, VDSI plainly has both, as a party to the Inventions Agreement." Dkt. No. 279 at 2 n.7 (internal citations omitted). On appeal, the Ninth Circuit did not distinguish between VCL and VDSI, concluding simply that "VDSI and VCL are the prevailing parties" because they "received all the relief they requested." *Venture Corp.*, 694 Fed. Appx. at 599.

Awards under § 1717 are generally limited to parties who contract with one another. However, California courts recognize an exception where the claims of contractual and non-contractual parties are "so factually interrelated that it would have been impossible to separate the activities . . . into compensable and noncompensable time units." *Cruz v. Ayromloo*, 155 Cal. App. 4th 1270, 1277 (2007) (citation omitted). In addition, the assignee of a party to a contract may be entitled to fees under § 1717. *See Cal. Wholesale Material Supply, Inc. v. Norm Wilson & Sons, Inc.*, 96 Cal. App. 4th 598, 605, (2002) (assignee who unsuccessfully sought to enforce assigned contract liable under § 1717).

Here, the Court concludes that VDSI and VCL are both entitled to fees under § 1717. Although Barrett is correct that VCL and Barrett are not parties to a contract containing an attorneys' fees provision, VCL's claims are "so factually interrelated" with those of VDSI that it would not make sense to distinguish between the two companies. *See Cruz*, 155 Cal. App. 4th at 1277. Plaintiffs case for why they, as opposed to Barrett, owned the inventions, depended on demonstrating the sequence of ownership from Barrett to VDSI, and then from VDSI to VCL.

5

The Court credits Plaintiff's argument that, even if VCL had not been a party to the case, VDSI would have presented the exact same evidence and incurred the exact same expenses in prosecuting the action. Further, if VDSI had not been a party to the case, VCL would have been entitled to fees as VDSI's assignee. *See Cal. Wholesale*, 96 Cal. App. 4th at 605. In short, for the purpose of this motion, VDSI and VCL are one and the same.

### E. Reasonableness of the Fees: Hours Requested

Having determined that both VDSI and VCL are entitled to fees under § 1717, the Court turns to the reasonableness of the fees requested. Plaintiffs request $2,063,111.00 in fees, representing 4,084.6 hours billed between eight attorneys and paralegals. In support of the request, Plaintiffs submitted detailed timesheets and a declaration from David Elkins, the lead attorney on the case.

Barrett argues that the Court should not award fees because he cannot afford to pay. Dkt. No. 321. He avers that he has limited savings and that any award of attorneys' fees will drive him into bankruptcy. Dkt. No. 320 ¶¶ 25, 27. Additionally, Barret contends that there is "no remotely credible theory supporting the reasonableness of the fees requested here." Dkt. No. 321 at 16.

As to Barrett's first argument, a court may not consider the losing party's inability to pay when setting an award under § 1717. *Walker v. Ticor Title Co. of Cal.*., 204 Cal. App. 4th 363, 372 (2012). As to the second argument, Plaintiffs rightly point out that Barrett failed to raise even one specific objection to the requested fees. That said, "In determining reasonable hours, the requesting party bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).[1] "Those hours may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or

---

[1] Plaintiffs say that the Court may not cut more than ten percent from the requested fees because Barrett did not make any specific objections to the requested fees. *See Dixon v. City of Oakland*, No. C-12-05207 DMR, 2014 WL 6951260, at *10 (N.D. Cal. 2014) (*citing Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (9th Cir. 2008)). Barrett indeed failed to mount a genuine attack on Plaintiffs' requested fees – his opposition largely recycles unrelated arguments. Nevertheless, "the burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates" are reasonable. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). As is discussed below, the Court is not satisfied that Plaintiffs entirely met that threshold burden.

otherwise unnecessary." *Id.* (*citing Hensley*, 461 U.S. at 433-34). One practice that makes it difficult to evaluate the reasonableness of requested fees is block billing. Although not per se objectionable, a court may reduce requested hours where block billing makes it difficult to determine how much time was spent on particular activities. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007); *Apple, Inc. v. Samsung Elecs. Co*., No. C 11-1846 LHK (PSG), 2012 WL 5451411, at *5 (N.D. Cal. 2012) (observing that block billing can inflate hours by between ten and thirty percent); *Jaramillo v. County of Orange*, 200 Cal. App. 4th 811, 830 (2011).

Based on its independent review of the timesheets submitted, and in light of occasional instances of block billing on counsel's timesheets, the Court concludes that Plaintiffs have not persuasively substantiated some of their work on the case. Attached as Exhibit A to this Order is a chart showing the timesheet entries that contained block billing, and indicating where and by how much the Court deducted from the requested hours.

The Court also considers one entry – for David Elkins on December 17, 2013 – to be excessive. The entry states that Elkins spent 4.6 hours preparing for and appearing at the hearing on a motion to dismiss. The minute entry, however, states that the hearing lasted only 16 minutes. Dkt. No. 33. Accordingly, the Court deducts 2.6 hours, leaving a total of 2.0 hours.

Taking into account the Court's reductions, the total hours for each attorney and paralegal are:

|  | **Belfiore** | **Berry** | **Black** | **Elkins** | **Grasser** | **Langer-Osuna** | **Marasa** | **Rathke** |
|---|---|---|---|---|---|---|---|---|
| **Modified 2013** |  |  |  | 60.2 | 66.2 |  |  |  |
| **Modified 2014** | 158.8 |  |  | 232.9 | 525.2 | 266.4 |  |  |
| **Modified 2015** | 4.8 | 85.3 | 65.1 | 414.2 | 516.8 | 613.2 | 457.6 | 524.7 |
| **Modified Total Hours** | 163.6 | 85.3 | 65.1 | 707.3 | 1,108.2 | 879.6 | 457.6 | 524.7 |

### F. Reasonableness of the Fees: Hourly Rates

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers*, 796 F.2d at 1210-11 (*citing Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "Generally, the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services." *Blum*, 465 U.S. at 895 n.11. The reasonable hourly rate is "not made by reference to rates actually charged the prevailing party." *Cotton v. City of Eureka*, 889 F. Supp. 2d 1154, 1167 (N.D. Cal. 2012) (*quoting Schwarz v. Sec'y of Health and Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995)). The court may rely on its own familiarity with the local legal market to evaluate and set a reasonable hourly rate. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

Here, Plaintiffs offer the declaration of David Elkins, who served as lead counsel. Dkt. No. 322, Elkins Decl. ¶ 22. In it, he describes the scope and complexity of the case and the qualifications of Plaintiffs' litigation team. Elkins graduated from UC Davis Law School in 1990 and is now a partner at Squire Patton Boggs. His hourly rates ranged from $760 at the start of the case to $835. Elkins Decl. ¶ 22-23; Dkt. No. 322-Ex. B. Sarah K. Rathke, a Cleveland-based partner at the firm, was admitted to practice law in Ohio in 2001. Her hourly rate was $650. Elkins Decl. ¶ 24; Dkt. No. 322-2, Ex. B. Joseph P. Grasser, a senior intellectual property litigation association, was admitted in California in 2008. His hourly rate in was $495 in 2013, $510 in 2014, and $535 in 2015. Elkins Decl. ¶ 25; Dkt. No. 3-22 Ex. B. Rafael M. Langer-Osuna is a litigation associate admitted in Florida in 2011 and California in 2014. His hourly rate was $240 in 2014 and $395 in 2015. Elkins Decl. ¶ 26; Dkt. No. 322-2, Ex. B. Emily Berry was admitted in California in 2007 and her hourly rate was $400. Elkins Decl. ¶ 29; Dkt. No. 322-2, Ex. B. Melissa B. Black, an associate, was admitted in California in 2013. Her hourly rate was $340. Elkins Decl. ¶ 30; Dkt. No. 322-2, Ex. B. Plaintiffs team also included two paralegals, John

8

M. Belfiore and Jessica M. Marasa, whose hourly rates were $295 and $270, respectively. Elkins Decl ¶¶ 27-28; Dkt. No. 322-2, Ex. B. Elkins avers that all of the requested fees are reasonable and competitive for attorneys and paralegals of comparable skill and experience in the Bay Area. Elkins Decl. ¶¶ 22-30. Finally, Elkins notes that Plaintiffs are not requesting approximately $48,000 in fees that were accrued by attorneys who recorded fewer than fifty hours on the case. *Id.* ¶ 17.

The Court is not satisfied that Plaintiffs persuasively substantiated their requested fees. Elkins' declaration describes the complexity of the case and the effort that went into litigating it, but provides little more than biographical information about the litigation team. Plaintiffs' motion lacks declarations from independent attorneys vouching for the reasonableness of the requested fees. *See Blum*, 465 U.S. at 895 n.11. Plaintiffs also fail to provide the Court with objective information, besides the rates actually charged, on what attorneys of comparable skill, experience, and reputation bill for work on similar matters. See *Cotton*, 889 F. Supp. 2d at 1167. The Court is therefore left to rely on its own familiarity with the rates customarily charged in this district.

In *Kilopass Technology, Inc. v. Sidense Corp*, 82 F. Supp. 3d 1155 (N.D. Cal. 2015), the court awarded fees by drawing on survey data from the American Intellectual Property Law Association ("AIPLA"), which published information on hourly rates for attorneys in the San Francisco Bay Area. According to the AIPLA, in 2013 the first-quartile, median, and third-quartile hourly rates for partners were $500, $680, and $825, respectively. 82 F. Supp. 3d at 1171. The rates for associates in the same year were $321, $513, and $576. *Id.* The court also awarded fees ranging from $160 to $270 for paralegals, depending on how much detail counsel provided about their qualifications and responsibilities. *Id.* at 1171-72.

Based on the Court's own familiarity with the local legal market, the Court adjusts the fee award as follows:

9

| Attorney/Paralegal | Requested Fee | Adjusted Fee |
|---|---|---|
| Belfiore | 2014: $295<br>2015: $310 | 2014: $160<br>2015: $165 |
| Berry | $400 | $325 |
| Black | $340 | $300 |
| Elkins | 2013: $760<br>2014: $795<br>2015: $835 | 2013: $500<br>2014: $515<br>2015: $530 |
| Grasser | 2013: $485<br>2014: $510<br>2015: $535 | 2013: $321<br>2014: $330<br>2015: $340 |
| Langer-Osuna | 2014: $240<br>2015: $395 | 2014: $240<br>2015: $321 |
| Marasa | $270 | $165 |
| Rathke | $650 | $500 |

### G. Fee Award

Given the adjustments the Court has made to the requested hours and hourly rates, Plaintiffs are entitled to attorneys' fees as follows:

- Belfiore
    - 2014: 158.8 hours x $160 = $25, 408
    - 2015 4.8 hours x $165 = $792
- Berry
    - 2015: 85.3 hours x $ 325 = $27,722.50
- Black
    - 2015: 65.1 hours x $300 = $19,530
- Elkins
    - 2013: 60.2 hours x $500 = $30,100
    - 2014: 232.9 hours x $515 = $119,943.50
    - 2015: 414.2 hours x $ 530 = $219,526
- Grasser
    - 2013: 66.2 hours x $321 = $21,250.20
    - 2014: 525.2 hours x $330 = $173,316
    - 2015: 516.8 hours x $340 = $175,712

10

- Langer-Osuna
    - 2014: 266.4 hours x $240 = $63,936
    - 2015 613.2 hours x $321= $196,837.20
- Marasa
    - 2015: 457.6 hours x $165 = $75,504
- Rathke
    - 2015: 525.7 hours x $500 = 262,350

Adding all of that up gives a total award of $1,411,927.40

## III. CONCLUSION

For the reasons explained above, the Court grants Plaintiffs' motion for attorneys' fees. However, because Plaintiffs did not persuasively substantiate the requested hourly rates and some of the claimed hours, the Court reduces the fee award from $2,063,111.00 to $1,411,927.40.

**IT IS SO ORDERED.**

Dated: March 28, 2018

HOWARD R. LLOYD
United States Magistrate Judge

11